**UNITED STATES of America**

v.

**Mario ESCANDAR et al.**

**No. 70–333–Cr.**

United States District Court,
S. D. Florida.

Nov. 3, 1970.

---

Henry Carr, James J. Hogan, E. A. Kaufman, A. Carricarte and Frank Ragano, Miami, Fla., Ashton & Stitt, Pittsburgh, Pa., for defendants.

Robert W. Rust, U. S. Atty., Miami, Fla., for the government.

## MEMORANDUM OPINION AND ORDER

MEHRTENS, District Judge.

Defendants entered pleas of nolo contendere to various charges herein, reserving the right to move to suppress evidence seized as a result of interceptions made on the home telephone of defendant Mario Escandar (379–2042) and on the pay telephone located in the

lobby of the apartment building where Escandar resided (374–8809).

In accordance with an order of the United States District Court for the Southern District of Florida dated May 21, 1970, an interception of wire communications was authorized on the telephone number 379–2042 for a period not to exceed twenty (20) days from the date of the order. On June 10, 1970, an order was entered authorizing an extension of this interception for a period not to exceed fifteen (15) days. Both of these orders also required the filing of reports with the court every five days throughout the duration of the interception. The interception of the wire communications over 379–2042 was terminated on June 21, 1970.

Pursuant to an order of the United States District Court for the Southern District of Florida dated June 13, 1970, an interception of wire communications was authorized on the pay telephone number 374–8809 "only when surveillance by Special Agents of the Bureau of Narcotics and Dangerous Drugs indicate that Mario Escandar is in the apartment building described above. Interception of wire communications from the above-described public telephone facility shall only be conducted when it is determined by voice recognition by Special Agents of the Bureau of Narcotics and Dangerous Drugs that Mario Escandar is using the above-described public telephone." This authorized interception was for a period of time not to exceed twenty (20) days. This order further required the filing of interim reports. The interception of the wire communications over 374–8809 was terminated on June 20, 1970.

All of the above orders further required that the authorized interceptions be terminated upon the attainment of its authorized objectives. In each instance there was a finding of probable cause to believe that Mario Escandar, Juan Restoy, and others yet unknown had committed or were committing offenses enumerated in 18 U.S.C. § 2516, 21 U.S.C. § 174, 26 U.S.C. § 4704(a), 26 U.S.C. § 4705(a), 18 U.S.C. § 371. Finally, the Court, upon a finding of probable cause, authorized the use of a pen register on 374–8809 and a touch tone decoder on 379–2042.

On September 2 and 3, 1970, a hearing was held by this Court to determine the validity of defendants' motions to suppress evidence seized as a result of the above-authorized interceptions. Defendants have made three basic contentions. First, they argue that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, 82 Stat. 211–225, Ch. 119 of Title 18, U.S.C. (hereinafter referred to as Title III), is unconstitutional on its face in that it violates the First, Fourth and Fifth Amendments to the Constitution. Second, they contend that even assuming the statute satisfies the Constitution, the statute's provisions were not complied with in this case. Finally, defendants maintain that there was no probable cause on which to base orders of interceptions of wire communications on the telephone numbers 379–2042 and 374–8809. For the reasons which appear below the Court finds that defendants' arguments cannot be sustained and their motions to suppress must therefore be denied.

A. *The Constitutionality of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.*

The Constitutionality of Title III depends primarily on whether it complies with the requirements of the Fourth Amendment to the United States Constitution and the Supreme Court's pronouncements in Berger v. New York, L.Ed.2d 1040, Katz v. United States, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 [1967], Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 [1967] and Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 [1966]. The Fourth Amendment requires that probable cause be established before an impartial and independent judicial officer before an intercep-

tion may be properly authorized.[1] Where communications are the subject of seizure, the "type of conversation sought" must be described with particularity in the supporting affidavit and the authorizing warrant.[2] The interception that follows any such judicial determination must be "limited, both in scope and in duration, to the specific purpose of establishing the contents of the * * * unlawful telephonic communications."[3] It must be terminated once the conversation sought is seized.[4] Because "the usefulness of electronic surveillance depends on lack of notice to the suspect"[5] and because it is well recognized that "officers need not announce their purpose before conducting an otherwise authorized search if such announcement would provoke * * * destruction of critical evidence," prior or contemporaneous notice of interception of communications by court authorization is not required.[6] There must, however, be some "showing of exigency, in order to avoid notice" in the supporting affidavit.[7] Finally, the communications seized must be under court control.[8]

 Title III of the Omnibus Crime Control and Safe Streets Act of 1968 was an attempt among other things to devise a limited system of wire surveillance and electronic eavesdropping for law enforcement use that fulfilled the demands of the Constitution. It is this Court's opinion that Title III fully satisfies the demands of the Fourth Amendment and cases thereunder set out above.

For all normal investigative interceptions a rigorous procedure of antecedent justification to the court is a necessary and indispensable precondition of a valid statutory surveillance.[9] The court whose authorization is sought must be presented a lengthy and complete written application, under oath, which sets out in the first instance facts sufficient to show probable cause. Section 2518(2) empowers the court to whom the application is made to require, if it desires, additional evidence in support of the application prior to the determination by the court of the application's satisfaction of the requirements of probable cause. Necessary to a constitutionally circumscribed interception of communication is the particularized description of the "offense [that] has been or is being committed" and "the type of conversation" sought in the authorizing order.[10]

Section 2518(1) (b) clearly states that the warrant application must contain a "full and complete statement of the facts and circumstances relied upon by the applicant", including:

(i) details as to the particular offense that has been, is being, or is about to be committed,

(ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted,

(iii) a particular description of the type of communications sought to be intercepted,

(iv) the identity of the person, if known, committing the offense whose communications are to be intercepted.

Section 2518(3) further requires that before any authorization of interception can be issued, the court must find the

1. Berger v. New York, *supra*, 388 U.S. at 55.

2. *Id.*, at 57, 87 S.Ct. 1873.

3. Katz v. United States, *supra*, 389 U.S. at 354, 88 S.Ct. at 512.

4. Berger v. New York, *supra*, at 59–60, 87 S.Ct. 1873.

5. Katz v. United States, *supra*, at 358, 88 S.Ct. at 515, fn. quoting Lopez v. United States, 373 U.S. 427, 83 S.Ct.

1381, 10 L.Ed.2d 462 (dissenting opinion of Mr. Justice Brennan).

6. Katz v. United States, *supra*, 389 U.S. at 355–356, 88 S.Ct. 507.

7. Berger v. New York, *supra*, 388 U.S. at 60, 87 S.Ct. at 1884.

8. *Id.*, at 61, 87 S.Ct. 1873.

9. 18 U.S.C. Section 2518.

10. Berger v. New York, *supra*, 388 U.S. at 57–58, 87 S.Ct. 1873.

allegations of particularized fact supported by probable cause, including findings that:

 (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

 (b) there is probable cause for the belief that particular communications concerning that offense will be obtained through such interception;

 &#42; &#42; &#42; &#42; &#42; &#42;

[and]

 (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

Finally, Section 2518(4) requires that each such particularized finding be embodied in the warrant so as to circumscribe the scope of the resulting search and seizure. Clearly, therefore, defendants' objections that Title III does not provide for the traditional requirements of adequate particularity as a precondition to a valid search under the Fourth Amendment are not justified. Significantly, the New York statute condemned by the Supreme Court in *Berger* was totally lacking in fulfilling the requirements of particularization either in the warrant application or in the issued warrant. Title III was obviously intended to remedy this flaw.

If the court determines the application sufficient and authorizes surveillance in conformance with statutory requirements, it may still retain control of subsequent events. Section 2518(6) allows the authorizing court to require progress reports at any interval it deems appropriate. Upon conclusion of the interception the court receives the fruits of the search which are to be sealed at the court's direction.[11] The court also has the duty of determining on whom an inventory shall be served and under what conditions.[12] Therefore, judicial control, which is so necessary to any valid scheme under the Fourth Amendment, is amply provided for in Title III.

Defendants further contend that Title III runs afoul of the restrictions on the length of surveillance discussed by the Supreme Court in *Berger*. The Court in *Berger* clearly disapproved of the New York Statute which allowed electronic surveillance for a period of two months without continuing judicial supervision or a requirement that probable cause be reestablished after some shorter period of time.

On the other hand, the provisions of Title III are clear in limiting the scope and duration of the interception "to the specific purpose of establishing the contents of the &#42; &#42; &#42; unlawful telephonic communications." The Senate Report noted:

 [T]hey require that the duration of an interception not be longer than is necessary under the facts of the particular case. This is a command of the Constitution according to Berger v. New York, 388 U.S. 41, 59 [87 S.Ct. 1873, 18 L.Ed.2d 1040] (1967) and Katz v. United States, 389 U.S. 347, 355–56. [88 S.Ct. 507, 19 L.Ed.2d 576] [citation of cases omitted] [13]

Moreover, only where the criminal telephonic conversations are lengthy and numerous may the warrant authorize an interception to be something more than brief:

 Where a course of conduct embracing multiple parties and extending over a period of time is involved, the order

---

11. Section 2518(8) (a).

12. Section 2518(8) (d) and (10) (a).

13. Senate Report 1097 accompanying Omnibus Crime Control and Safe Streets Act of 1967, April 29, 1968, at 101, U.S. Code Cong. & Admin. News 1968, p. 2190.

may properly authorize proportionately longer surveillance, but in no event for longer than 30 days, unless extensions are granted. [*citations omitted*] [14]

Therefore, the framers of Title III were clear in articulating their intention that, in conformance with the demands of *Katz* and *Berger,* the warrant under which interception is authorized must limit that interception in scope and duration to the specific purpose of establishing the contents of the particular criminal conversations to which it is directed. Where the criminality is brief, the intercept must be correspondingly brief. Only where it is lengthy and continuous may the intercept be lengthy and continuous. Section 2518(1) (d) encompasses these restrictions. Along with a particularized description of the offense, the nature and location of the communication facility and the type of communication, the application must also contain:

A statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter.

Therefore, with the exception of cases where probable cause is established that the communications sought are recurring, the interception must terminate immediately "after the described type of communication has been first obtained."

In addition, Section 2518(4) (e) requires the warrant to indicate the period of authorized surveillance. And most importantly, Section 2518(5) requires that:

Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall

be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

Unlike the New York Statute condemned in *Berger,* Title III limits the initial period of interception to no longer than 30 days, provides for the termination of the interception when the authorized objective has been accomplished, requires reestablishment of probable cause for any and all extensions, provides for judicial supervision throughout the period of the interception, and requires minimizing of the interception of communications not otherwise subject to interception under the Act.

■ Despite the comprehensive precautions taken by the framers of Title III to insure that constitutional requirements are met defendants argue that any seizure of communications not otherwise subject to lawful interception renders the statute unconstitutional on its face as allowing an indiscriminate and overbroad search. Although Section 2517(5) does permit the seizure and use of these other interceptions, it does so only on the condition that the original warrant was valid and that efforts had been made to minimize the interceptions of other communications not sought. The law is well settled that such seizure is permissible and not in violation of the rule set out in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 [1927] that seizure during the execution of a search warrant is limited only to items specified in the warrant. The Supreme Court in its decision relating to standing in wire tap cases explicitly stated:

If the police enter a house pursuant to a valid warrant authorizing the seizure of specified gambling paraphernalia, but discover illegal narcotics in the process of the search, the narcotics may be seized and introduced in evidence in the prosecution of the

14. *Id.*

homeowner, whether the narcotics belong to him or to a third party. [citation of cases omitted] [15]

Therefore, the rule is that if the original warrant is valid and its execution has been properly carried out, seizure of non-related criminal evidence is permissible. [Since Title III amply provides for the necessary requirements outlined by *Berger* and *Katz,* the statute does not violate the Constitution simply because communications not otherwise the subject of seizure are overheard during the course of a valid search.

With all the restrictions and limitations which Congress placed upon the use of electronic surveillance and interruptions of telephonic communications, defendants nevertheless argue that the statute is unconstitutional simply because both ends of a communication are overheard when a telephone conversation is tapped. Indeed, they argue that no constitutionally valid statute could be drawn because of this fact alone. This argument, however, is without constitutional merit, when it is realized that the purpose of the Fourth Amendment is to prevent *unreasonable* searches and seizures rather than to prohibit searches solely because of their factual breadth. Taken together, *Katz* and *Berger* make it clear that the concept of reasonableness, which is paramount in the consideration of any Fourth Amendment search, is based on the degree to which the interception is properly limited in scope and duration to the purpose of establishing the content of the illegal telephonic communications. Simply because a tap on a telephone allows interception of both ends of a conversation does not *ipso facto* require that such interception can never be constitutional. For example, despite the apparent breadth of bugging devices (which although limited to one side of a telephone conversation can encompass several parties who happen to be within the listening area of the bug) the Supreme Court in neither *Katz* nor *Berger* suggested that this breadth alone would disqualify the use of a bugging device under proper procedural safeguards. Since Title III amply includes the kinds of procedural safeguards envisioned by the drafters of the Fourth Amendment, defendants' argument that the Act must fall because more than one person may be the subject of a search cannot be given constitutional validity.

In summary, this Court finds unpersuasive defendants' arguments that Congress has failed to comply with the requirements of Berger v. New York, in drawing Title III. There are substantial differences between Title III and the New York statute condemned in *Berger* and a brief résumé of these differences demonstrate to this Court's satisfaction that the necessary requirements imposed by the Fourth Amendment have been fulfilled. First, there is a substantial difference between the *Berger* sixty day period and the Title III thirty day period. Second, unlike the *Berger* statute, Title III requires a particular description of facts showing the continuity of criminality before such continuous interception can occur. Third, as indicated above and again unlike the New York statute, execution and termination must both be prompt, and the intercept must be limited solely to the period of criminality. And fourth, the Court may order periodic reports at any intervals it wishes as to the content of the interception, requiring its discontinuance when the need articulated in the application and order no longer exists. The statute is thus clear in providing a framework of control, crucial to its constitutionality, in which the extended surveillance must operate. Once the particularized type of communication in furtherance of the continuous criminality particularly described has ended and the continuous criminal conversation particularly described has ceased, the framework of Title III insures that the interception must itself be discontinued.

15. *Alderman v. United States,* 394 U.S. 165, 177 fn. 10, 89 S.Ct. 961, 968, 22 L.Ed.2d 176 (1969).

■ In addition to the Fourth Amendment argument, defendants contend that Title III operates as an unconstitutional deprivation of free speech as protected in the First Amendment to the United States Constitution. Defendants argue that fear of electronic surveillance inhibits the exercise of rights guaranteed by the First Amendment. Fear of electronic surveillance, however, is not a direct limitation of free speech. In addition, it should be remembered that discriminating law enforcement surveillance under a statute replete with procedural safeguards is far different than indiscriminate law enforcement and private surveillance. Furthermore, it has long been recognized that some restriction on First Amendment rights is necessary in community living. Sound trucks or unregulated picketing have been properly prohibited.[16] And the right of privacy must give way when it is not consistent with a particular aspect of society living.[17] Significantly, the Court in neither *Berger* nor *Katz* placed any reliance on the First Amendment in its discussion of what is needed to draft a constitutionally satisfactory electronic surveillance statute.

■ Lastly, defendants contend that Title III of the Omnibus Crime Control and Safe Streets Act of 1968 violates the provisions of the Fifth Amendment to the United States Constitution because it seizes incriminating testimonial statements. However, the provisions of Title III relate to searches and seizures rather than interrogation. The Supreme Court has never held that statements made to one who is not a law enforcement officer are inherently in violation of the Fifth Amendment. Rather, as in *Berger* and *Katz,* the Supreme Court has treated statements seized by virtue of electronic surveillance as a search under the Fourth Amendment subject to the requirements of that amendment. Where electronic surveillance is employed, a court need not consider questions of custodial interrogation and the voluntariness of a waiver. The Fourth Amendment provides ample protection to those who are the subject of electronic surveillance by requiring that a search and seizure be executed under a warrant and be reasonable. Since this Court holds that Title III satisfies the provisions of the Fourth Amendment, it cannot be validly maintained that the Act's provisions violate the privilege against self-incrimination. Such a reading of the Fifth Amendment would render the protections of the Fourth Amendment as set out in *Berger* and *Katz* a redundancy.

Therefore, after careful consideration of all of Title III's provisions this Court concludes that the authorization of electronic surveillance and interception of wire communications as authorized by Title III violates no constitutional provision.

## B. *The Execution of Title III*

■ Defendants further contend that even if Title III is ruled constitutional on its face, it was applied and executed in an unconstitutional manner in this case. More simply, defendants argue that the Act's provisions were not satisfactorily complied with and the evidence obtained from the authorized interceptions should be excluded from evidence. The central inquiry, therefore, is whether under all the circumstances of this case the authorized interceptions as executed were reasonable and in accord with the statute and the Constitution.

Defendants place great reliance on the testimony by several agents at the September hearing that indicated they were unclear as to the details of the authorized objectives of the interceptions. Although it is true that the monitoring agents were not able to relate the specific statutes involved in the orders authorizing

---

16. See International Brotherhood of Teamsters, Local 695 v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

17. See Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456.

the interceptions, they did know that the purpose of the interceptions was to find the *sources of supply* of drugs sold by Escandar. Indeed, it is apparent that this objective was never reached.[18] Therefore, the argument presented by the defendants that the agents were unable to terminate the interception upon the attainment of the authorized objective because they did not know the specifics of that objective, fails. As a result, defendants cannot now validly contend that the interceptions should have been terminated before the expiration of the time period allowed in the court orders. Of final significance is that the interception of communications over Escandar's home telephone was in fact terminated before the conclusion of the first extension of fifteen days.

Arguments by the defendants that the interceptions were unreasonable ignore the fact that there was continuing judicial supervision in this case. The authorizing court, after an examination of the affidavits and the application, found that there was probable cause to believe that the subject of the proposed interception had engaged and was engaging in violations of certain named United States Code provisions. A further finding of probable cause was made by the supervising court when extensions were granted on the interceptions. The backbone of the Fourth Amendment is that impartial and independent judicial supervision is a necessary ingredient of reasonableness in searches by electronic surveillance. Whatever the transitory vagueness of the monitoring agents' knowledge regarding the specifics of the interception orders, the presence of tight control by the authorizing court more than amply fulfilled the requirements of the statute and reasonableness under the Fourth Amendment.

Defendants also contend that the interceptions were authorized in the absence of a detailed delineation of the traditional investigatory techniques tried and a statement that they did not succeed or were unlikely to succeed if tried in the future. However, the affidavits accompanying the applications more than fulfill the statute's requirements that normal investigative procedures should first be tried or in the alternative there should exist some good reason why it would be futile to use them. For example, in an affidavit dated May 21, 1970, and signed by Carlos Harrison, a Special Agent for the Bureau of Narcotics and Dangerous Drugs, it is stated that confidential informants are reluctant to testify for fear of physical retaliation, physical surveillance of Escandar and Restoy had proved fruitless concerning illegal narcotics importation, raids are traditionally unsuccessful in gathering evidence of importation and distribution of narcotics, and it had been discovered that Escandar and others conduct their illegal narcotics business over the telephone.[19] Moreover, during this investigation agents found themselves in actual physical danger.

Investigatory agents in this case were dealing with an especially sophisticated ring of narcotics suppliers and purchasers. The main thrust of the investigation was to find and apprehend those individuals who were supplying Escandar and Restoy with narcotics. It was for this purpose, among others, that Congress enacted Title III. And where, as here, the investigating agents have attempted through the more usual forms of investigation to uncover the sources of supply and have included in the affidavit statements to that effect, the provisions of the Act and the commands of reasonableness have been fully complied with.

Defendants argue, nevertheless, that several of the orders authorizing a pen register, a touch tone decoder, and interceptions were defective because they did not comply with Section 2518(3)(c) and Section 2518(5) in that there were no findings that "normal investigation procedures have been tried and failed or

---

18. September Transcript-212.

19. Paragraphs 23–27 of Harrison's affidavit, May 21, 1970.

reasonably appear to be unlikely to succeed if tried or to be too dangerous," and there was no requirement that the interceptions should be executed as soon as possible. However, the Senate Report on Title III makes clear that a pen register is not an interception under the Act and therefore compliance with Section 2518(5) would not be required.[20] Likewise, the requirement that an interception shall be executed as soon as practicable does not apply statutorily to a pen register. In any event, the Court finds that the pen register and touch tone decoder used on the two telephones which were the subject of this case were executed as soon as practicable. This Court also concludes that the statement of investigatory techniques listed in Harrison's affidavit apply equally to the use of the pen register and touch tone decoder.

■ Defendants also urge that because the statement as to the methods of investigation used were contained only in the affidavits and not in the orders, the authorizations for interceptions were defective. However, Section 2518(1) (c) only requires that such a statement be included in the affidavit. This section does not require that everything found in the application must be included in the order authorizing the interception. Furthermore, Section 2518(3) requires only that the authorizing judge make a determination that normal investigative procedures have been tried and appear likely to fail. There is no specific mandate that such determination be reflected in the written order. In any event, in the instant case where all the interceptions and all the pen registers ordered related to one large conspiracy the omission from some of the orders of detailed written findings under Section 2518(3) is not substantial enough to justify a ruling that the interceptions

authorized were unreasonable or in non-compliance with the statutory mandate.

### C. *Probable Cause*

■ Defendants last argument is that probable cause was not established for the interception of wire communications on telephone number 379–2042 as required by Section 2518(3) (d). Defendant argues that the mere conclusory statement in Agent Harrison's affidavit that an informant had "displayed extremely consistent reliability" is insufficient under Spinelli v. United States [21] and Aguilar v. Texas.[22] Facts in support of the informant's reliability were submitted, viz., that she was observed by surveilling agents of the Miami Regional Office visiting Escandar's residence.[23] Moreover, other facts in the affidavit related telephonic discussions between federal agents and Escandar concerning money owed for previous purchases of narcotics.[24] Therefore, when examined as a whole, it is clear that Agent Harrison's affidavit states substantial facts from which a proper finding of probable cause could be made under Title III and applicable cases.

### D. *Conclusion.*

In conclusion, this Court holds that Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is constitutional on its face, and is constitutional as applied in this case. Moreover, the Court finds that the affidavits, orders, and execution of court ordered interceptions were in substantial compliance with Title III and that the resultant interceptions were reasonable under the Fourth Amendment. Finally, the Court concludes that there was probable cause for the authorized interceptions.

It is, therefore, ordered, this 2 day of November, 1970, that defendants' motions to suppress the evidence obtained

---

20. Senate Report, *supra*, page 90.

21. 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

22. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964).

23. Paragraphs 16, 18 of Harrison's affidavit, May 21, 1970.

24. *Id.*

through the authorized interceptions under attack in this case on the telephone numbers 379–2042 and 374–8809, and defendants' motions to suppress the evidence obtained as a result of the authorized pen register on telephone number 374–8809 and the authorized touch tone decoder on telephone number 379–2042, be, and the same is, in all things denied.