**UNITED STATES of America**

v.

**Arthur Joseph DENISIO.**

**Crim. No. 73–0109.**

United States District Court,
D. Maryland.

June 11, 1973.

William A. Pope, Baltimore Strike Force, Baltimore, Md., for plaintiff.

Russell J. White, Towson, Md., for defendant.

MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Petitioner, under indictment for possession, receipt and transportation in commerce or affecting commerce of a firearm, by a convicted felon—18 U.S.C. App. § 1202(a)(1)—moves to suppress all evidence in connection with a wiretap placed on his telephone.

Pursuant to complementary state and federal law governing the placement of electronic surveillance under strict judicial supervision, the Baltimore County State's Attorney applied for and obtained on August 7, 1972, a warrant to intercept communications on the defendant's telephone relating to the crimes of robbery, bribery and conspiracy. 18 U.S.C. §§ 2510–2520 (1970); Md.Ann.Code Art. 35, §§ 92–99 (1965); Art. 27, §§ 125A–125D (1971); State v. Siegel, 266 Md. 256, 292 A.2d 86 (1972). During the monitoring of defendant's telephone, which occurred from August 10, 1972, to September 1, 1972, state officers overheard conversations relating to criminal violations of both the gambling and firearms laws. The officers, on the basis of the conversations concerning gambling offenses, obtained a warrant to search defendant's premises on September 25, 1972, for the purpose of uncovering evidence of bookmaking operations. In the course of the search, officers discovered the firearms which are the subject of this prosecution.

To complete the basic story, federal authorities, apprised of the interception of conversations relating to violations of federal firearms laws and having procured this indictment, obtained a court order on March 28, 1973, authorizing the use of those conversations at this trial. Judge Kenneth C. Proctor, Circuit Judge for Baltimore County, signed each of the aforementioned orders.

Defendant does not challenge the constitutionality of the enabling legislation (see United States v. Bobo, 477 F.2d 974, 4th Cir., 1973) or the authority of the persons applying for and signing the documents in question.

The motion challenges the sufficiency of the original application to monitor defendant's telephone, the length of time of the interceptions, and the delay in obtaining subsequent judicial approval of the use of the conversations relating to the alleged violations of the federal firearms law.

18 U.S.C. § 2518(10) provides, in pertinent part, that a motion to suppress evidence arising from the interception of an electronic communication shall be granted upon a finding that the communication was unlawfully intercepted, or that the interception was not made in conformity with the authorization or approval.

I.

The affidavit in support of the application for the original warrant, duly sworn by Officers Paul A. Gillan and Joseph T. Kelly, contains, inter alia, the following information:

1. Both Gillan and Kelly have experience in criminal investigation, seven years and three years respectively.

2. Reliable informant No. 1, who had provided accurate information on numerous previous occasions as detailed in the affidavit,

a. told the officers on June 15, 1972, that defendant had solicited him to aid in a robbery and that further contact would be made. Informant No. 1 also identified defendant as the person known to the officers as a major violator of the laws relating to receiving stolen goods, abortions and gambling, and known to associate with Albert Carmen Izella, a similarly known criminal. The officers confirmed this with a check of defendant's and Izella's criminal records.

b. told the officers on June 19, 1972, of a conversation with an eyewitness and participant in a robbery, committed in December, 1971, of Neno Bellanti. This person was said to be reliable, and a check of police records corroborated the fact that Neno Bellanti had been robbed in December, 1971.

c. told the officers on June 21, 1972, that defendant had stolen numerous

firearms which were used in robberies by unknown subjects. With Officer Gillan sharing the ear piece, the informant telephoned the home phone number of defendant and discussed with a person addressed as "Dutty" (known to be defendant's nickname) the procurement of firearms.

d. with Officer Gillan again listening, called defendant's home phone number on June 29, 1972, addressing "Dutty" who said that "things" were not yet "set up." From experience, Officer Gillan recognized this to be in reference to criminal activity.

e. told the officers shortly prior to July 14, 1972, the identity of the person to be robbed, and of the contemplation of an additional robbery, and that defendant had advised of the presence of friends in the police department and in the judiciary who might be of assistance.

3. Mrs. Alice Bangert, Chief of Security at Hutzler's Westview store, reported following shoplifters to defendant's home address.

4. On July 19, 1972, Officer Gillan personally observed defendant associating with Izella, and noted that, while working in an undercover capacity, his identity as a police officer was discovered by the two men.

5. Reliable informant No. 2, who had given accurate information relating to criminal activities twenty-three times in the past,

a. told the officers on August 1, 1972, that defendant was engaged in criminal activity concerning abortions and murder. In addition, defendant had purchased stolen firearms directly from informant No. 2, and advised that stolen television sets and cameras were given as presents to policemen and judges.

b. told the officers of advice from two persons known personally to the informant that they had beaten up a person on orders from defendant.

6. Officers Gillan and Kelly stated that the various kinds of investigation described above were insufficient to further pinpoint defendant's participation in robbery and bribery, and insufficient to identify the other persons engaged in the activity with defendant. Interception of telephone conversations, therefore, seemed necessary and most likely to produce the relevant information.

On the basis of this affidavit, State's Attorney Samuel Green applied for the order, stating that because of the scope of the conspiracy and criminal offenses suspected, the order should permit the surveillance to go beyond the first relevant conversation recorded. The surveillance would cease as soon as its objective were achieved, or after the passage of 28 days, within the statutory maximum of thirty days. See State v. Siegel, *supra.*

■ The affidavit passes the test of probable cause to believe that robbery, bribery and conspiracy were being, or would imminently be, committed, that the telephone would be utilized to that end, and that the pursuit of other paths of investigation would prove fruitless. 18 U.S.C. § 2518(1). The reliability of the informants, the specificity of the information supplied (including first-hand knowledge from three different sources), and the substantial corroboration by police investigation (including the sharing of an ear piece during conversations between informant No. 1 and defendant), satisfy the standards elaborated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968). This affidavit is far more substantial, for example, than the one approved in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), where the warrant issued upon advice from an informant not known to be reliable, but corroborated by the officer's knowledge of defendant's association with known criminals. See also United States v. Kleve, 465 F.2d 187 (8th Cir. 1972), in which the Court of Appeals reversed the grant of a motion to suppress a warrant for electronic interception based on an affidavit far less

compelling, and United States v. Askins, 351 F.Supp. 408 (D.Md.1972).

The discovery of Officer Gillan while working in an undercover capacity, coupled with a thorough description of the utilization of other investigative techniques, reasonably supports the proposition that other avenues of investigation were exhausted. 18 U.S.C. § 2518(1)(c), United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970), rev'd on other grounds sub nom. United States v. Robinson, 468 F.2d 189 (5th Cir. 1972), United States v. Tortorello, 342 F.Supp. 1029 (S.D.N.Y.1972), United States v. Mainello, 345 F.Supp. 863 (E.D.N.Y. 1972), United States v. Leta, 332 F. Supp. 1357 (M.D.Pa.1971), United States v. Askins, *supra*.

Furthermore, in view of the continuing nature and scope of the conspiracy suspected, the application for the order to extend beyond the first relevant interception is reasonable. 18 U.S.C. § 2518(1)(d), Cf. United States v. King, 335 F.Supp. 523 (S.D.Cal.1971), United States v. Mainello, *supra,* United States v. Escandar, *supra*.

The Court thus rejects defendant's challenges to the sufficiency of the application and corresponding warrant signed by Judge Proctor on August 7, 1972.

## II.

The interceptions began on August 10, 1972. While apparently revealing little germane to the investigation of robbery and bribery, the conversations proved a windfall by way of discovery of defendant's bookmaking activities. Defendant contends that when the interceptions appeared unproductive as to robbery and bribery, the officers were obligated to cease surveillance lest the operation become a general search. In this connection, he calls attention to the "minimization" requirement of 18 U.S.C. § 2518(5).

■■ This argument has some interesting legal twists. The more usual contention would be that the officers received sufficient relevant information to attain their authorized objectives, requiring cessation of surveillance. To command similarly that officers cease operations when the first few days prove unproductive results in a squeeze, permitting the continuation of electronic interceptions only within some optimum range of productivity. There is no basis in reason or in the law for such a rule. The additional twist is that the usual *minimization* contention revolves around procedural safeguards for minimizing the interception of irrelevant conversations. See United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972), aff'd sub nom. United States v. Giordano, 469 F. 2d 522 (4th Cir. 1972). Defendant does not argue that the surveillance was illegal for failure to minimize in the usual sense.

The officers ceased operations on September 1, 1972, twenty-three days after Judge Proctor's order and within the maximum imposed by the order and the statute. This hardly implies abuse of discretion. See United States v. Mainello, *supra,* (Length of interception fifty days, including renewal order) United States v. King, *supra* (same), United States v. Escandar, *supra* (30 days).

As to the interception of conversations regarding bookmaking operations, the statute specifically contemplates the possibility of overhearing information relating to offenses not within the four corners of the order. 18 U.S.C. § 2517; United States v. Cox, 449 F.2d 679 (10th Cir. 1971); United States v. Tortorello, *supra,* United States v. Mainello, *supra,* United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa.1972).

## III.

The interception of conversations relating to bookmaking operations led the officers to apply on September 25, 1972 for a warrant to search the premises of defendant at 8072 Baltimore Street in Baltimore County. Defendant does not challenge the sufficiency of this particular application, and it is enough to note that the description of information ob-

tained from electronic surveillance uncontestably demonstrates probable cause to believe that a search of defendant's premises would reveal evidence of gambling operations.

 In the course of this search, the officers found the firearms which are the subject of this indictment. Defendant does not challenge the procedures employed in the search of his premises, so the Court must infer that the discovery of the firearms comes within the "plain view" or "inadvertent disclosure" exception to the warrant requirement of the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

### IV.

As to conversations relating to the offenses alleged in the present indictment, defendant contends that their use in Court is precluded because the government violated the rule that a subsequent order authorizing the admission of evidence of electronic surveillance bearing on "other" offenses must be obtained as soon as is practicable. 18 U.S.C. § 2517(5). Presumably, the United States Attorney had information well before February 21, 1973, when the indictment was returned, so that the order dated March 28, 1973, three weeks subsequent to the filing of the motion to suppress, was not obtained "as soon as is practicable."

It does not follow, however, that the conversations should be suppressed. While the timeliness of the application is one consideration which the Circuit Judge may consider in deciding whether to sign the subsequent order, *it is irrelevant to the ascertainment of the legality of the original order and of the execution of the terms of that order.* Together with proper authorization, which is not contested, these are the only issues relevant to the determination of this motion. Since the Court has found the warrant to have issued upon probable cause and the execution to be within the scope of its terms, the motion

to suppress does not lie. 18 U.S.C. § 2518(10).

### V.

For the above reasons, it is this 11th day of June, 1973, by the United States District Court for the District of Maryland,

Ordered:

1. That the motion to suppress be denied with respect to evidence of firearms discovered in the search of defendant's premises.

2. That the motion to suppress be denied as to conversations relating to violations of the firearms laws intercepted during a court-authorized electronic surveillance of defendant's telephone between August 10 and September 1, 1972.