## UNITED STATES v. LEACH.

District Court, D. Delaware. March 21, 1928.

### No. 19.

1. **Intoxicating liquors** ⊂⊃249—**Searches and seizures** ⊂⊃7(8)—**Search warrant for search of place described need not name owner or occupant (Const. Amend. 4; Espionage Act, tit. 11, § 3 [18 USCA § 613]).**

Under Const. Amend. 4, and Espionage Act, tit. 11, § 3 (18 USCA § 613), which latter act by provisions of National Prohibition Act, tit. 2, § 25 (27 USCA § 39), governs search warrants in liquor cases, search warrant for search of place particularly described is not invalid because it does not name or describe the owner or occupant.

2. **Intoxicating liquors** ⊂⊃249—**Searches and seizures** ⊂⊃7(10)—**Search of private dwelling held not authorized because prohibition agent smelled odor of fermenting mash emanating from outbuildings (National Prohibition Act, tit. 2, § 25 [27 USCA § 39]; Const. Amend. 4).**

Under National Prohibition Act, tit. 2, § 25 (27 USCA § 39), and Const. Amend. 4, a warrant for search of a private dwelling *held* not authorized on an affidavit that a prohibition agent "smelled a very strong odor of fermenting mash emanating from several outbuildings," and, being void as to the dwelling, the warrant does not authorize search of any other part of the premises.

3. **Searches and seizures** ⊂⊃3(8)—**Search warrant should be directed to named persons, not to class (Espionage Act, tit. 11, §§ 6, 7 [18 USCA §§ 616, 617]).**

Search warrant should be directed to a person or persons by name and not to a class, under Espionage Act, tit. 11, §§ 6, 7 (18 USCA §§ 616, 617).

Criminal prosecution by the United States against Chester Leach, for unlawful possession of property designed for the manufacture of intoxicating liquor. On motion by defendant to quash the search warrant and exclude articles seized thereunder from evidence. Motion granted.

Leonard E. Wales, U. S. Atty., of Wilmington, Del.

J. Frank Ball, of Wilmington, Del., for defendant.

MORRIS, District Judge. Chester Leach, charged by information filed against him by the district attorney with the unlawful possession of "property designed for the manufacture of intoxicating liquor, in violation of section 25, tit. 2, of the National Prohibition Act (27 USCA § 39), now moves, prior to his trial, that the search warrant, under color of which a seizure was made, be quashed, and the district attorney restrained from offering in evidence at the trial the articles so seized.

The ground upon which the warrant is specifically attacked is that "it did not particularly describe or name the person upon whom the search warrant was to be made." The basis of this objection of the defendant is, of course, the Fourth Amendment to the Constitution of the United States, which reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." More particularly the objection rests upon section 3, tit. 11, of Public Law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917 (40 Stat. 228 [18 USCA § 613]), which title, by express provision of section 25, tit. 2, of the National Prohibition Act, governs search warrants in liquor cases. Section 3 provides: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

[1] The government makes no contention that the warrant adequately names or describes the person, but says that the warrant in the case at bar authorized and commanded the search of a place, not of a person, and that in such cases it is not necessary that the warrant name or describe a person. I find no cases in opposition to this contention of the government, and it has been sustained by many courts. Petition of Barber (D. C.) 281 F. 550; Gandreau v. United States (C. C. A.) 300 F. 21; United States v. Camarota (D. C.) 278 F. 388; and In re Hollywood Cabaret (C. C. A.) 5 F.(2d) 651.

[2] Yet, for a reason of such gravity that it cannot be ignored by the court, notwithstanding it was not specifically assigned by the defendant, the warrant is, I think, wholly void, and must be quashed. Section 25 of title 2 of the National Prohibition Act expressly provides: "No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house. The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house." The

warrant, copy of which is printed in the margin,[1] authorized and commanded the executing officers to enter and search the premises described in the warrant. The premises there described are "the premises of Leach, the same being a one-story frame house, together with several other one-story frame buildings, being the first *residence* [2] on the

---

[1] Search Warrant.

United States of America, State of Delaware—ss.:

To Colonel Samuel O. Wynne, Federal Prohibition Administrator, and His Deputies, or Any or Either of Them—Greetings:

"Whereas, complaint on oath and in writing, supported by affidavits, has this day been made before me John Pearce Cann, a United States commissioner for the state of Delaware, by Henry D. Thompson, prohibition agent, alleging that he has reason to believe and does believe that in and upon certain premises within the state of Delaware, to wit, the premises of Leach, the same being a one-story frame house, together with several other one-story frame buildings, being the first residence on the right side of a dirt road which turns to the left west of Cypress bridge, about 6½ miles west of Townsend, New Castle county, Delaware, there have been and are now located and concealed intoxicating liquors (or property designed for the manufacture of intoxicating liquors) which said liquors (or property) are being sold and possessed for beverage purposes in violation of the National Prohibition Act, approved October 28, 1919, and of the statutes of the United States; and

"Whereas, the particular grounds for probable cause for the issuance of this search warrant consist of the testimony, under oath, of Henry D. Thompson, who personally appeared before me, the undersigned United States commissioner, and testified, and also further affidavits that on the 9th day of November, 1927, about 5:15 p. m., I smelled a very strong odor of fermenting mash emanating from several outbuildings on the above-described premises; and

"Whereas, this cause coming on for hearing on the application for a search warrant supported by affidavits as herein stated, and the undersigned United States commissioner is satisfied of the existence of the grounds of the said application and that there is probable cause to believe of their existence:

"Now, therefore, pursuant to title XI of the Act of Congress approved June 15, 1917, and pursuant to the provisions of the National Prohibition Act, you are hereby authorized and commanded, in the name of the President of the United States, to enter said premises during the daytime with the necessary and proper assistance, and forthwith search the same for all such liquor and property hereinbefore specified, to seize and take the same into your possession, if found; to bring the said liquor and property before the undersigned, and to report and act concerning the same as required of you by law.

"Witness the hand and seal of the United States commissioner, at Wilmington, in the state of Delaware, this 19th day of Nov., 1927.

"[Signed] John Pearce Cann,

"[Seal.] United States Commissioner."

[2] Italics mine.

---

right side of a dirt road. * * *" The facts relied upon to constitute probable cause for the issuance of the warrant and the search of the residence are that the affiant "smelled a very strong odor of fermenting mash emanating from several outbuildings on the above-described premises." But such facts are not sufficient to bring the residence or private dwelling commanded to be searched within any exception to the general rule laid down by section 25 of title 2 of the Volstead Act, and consequently do not justify the issuance of the warrant for the search of the dwelling. Foster v. State (Okl. Cr. App.) 226 P. 602; Voorhies v. United States (C. C. A. 5) 299 F. 275; Roberts v. Commonwealth, 206 Ky. 75, 266 S. W. 880; Staker v. United States (C. C. A. 6) 5 F. (2d) 312. Under the Volstead Act, a private dwelling, not shown to be within the exceptions stated in the statute, is not subject to search, even if it is known that intoxicating liquor is being manufactured therein. United States v. Palma (D. C.) 295 F. 149. Moreover, being insufficient to search the dwelling proper, the warrant was wholly void and insufficient to permit a search of any part of the premises. State v. Pierce (Mo. App.) 269 S. W. 406.

The reason and the extent to which, under the Fourth and Fifth Amendments, private dwellings are zealously guarded from intrusion by officers of the law, are set forth in Cooley's Constitutional Limitations (8th Ed.) pp. 610–636; Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319; and Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647. These amendments, whose preservation is indispensable to the continuance of a free people, remain unrepealed and unmodified. The court is not at liberty to permit the destruction of these amendments or statutes passed in pursuance thereof by the disintegrating forces of encroachment, howsoever indirect, subtle, or gradual the encroachment may be.

[3] Again, the warrant was directed "to Colonel Samuel O. Wynne, Federal Prohibition Administrator, and His Deputies, or Any or Either of Them." The jurisdiction of Col. Wynne embraces the state of Delaware and the eastern part of the state of Pennsylvania. The warrant was executed, not by Col. Wynne, but by one of the numerous officers of the designated class. In Gandreau v. United States (C. C. A. 1) 300 F.

21, a warrant directed to the marshal of the district "or any of his deputies, or any federal prohibition agent, or any civil officer of the United States, duly authorized to enforce any law thereof" was held valid, under sections 6 and 7 of title 11 of Public Law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917. 40 Stat. 229 (18 USCA §§ 616, 617). Yet, if that ruling is sound, it is difficult to see why a direction to "any civil officer of the United States" would not be good. But it seems to me that such a direction would run counter to sections 6 and 7 of title 11 of the Espionage Act. 40 Stat. 229. The validity of a warrant directed not to one or more individual or specific officers but to a class came before Judges Thompson and Dickinson in United States v. Innelli (D. C.) 286 F. 731. They found it unnecessary to decide the question. Nevertheless, they said: "Whether absolutely necessary or not, however, we feel called upon for the expression of our opinion that the better, because the safer, practice is for the commissioner, when he finds a warrant should issue, to make a selection of qualified officers to serve it, and to designate them by mentioning them by name, and that no persons, other than those named, should execute the writ otherwise than in accordance with the provisions of section 7." I think a fair inference from their statement is that they deemed a direction that embraced a large class of officers to be of doubtful validity.

The warrant must be quashed, and the articles seized excluded from evidence.