**UNITED STATES of America, Plaintiff,**

v.

**William J. PERILLO et al., Defendants.**
**Crim. A. Nos. 2104–2106, 2123.**

United States District Court,
D. Delaware.
Sept. 2, 1971.

Conner & Daley, Wilmington, Del., for defendants.

## OPINION

LAYTON, District Judge.

The defendants in four criminal actions have moved to suppress certain evidence, i. e., telephone calls and other materials, obtained pursuant to Title 18 U.S.C. §§ 2510–2520 [1] upon the ground that said statute, pursuant to which the evidence was seized, is unconstitutional.

Defendants' motion is based upon two wiretaps and pen registers (mechanical devices which record numbers dialed from specific telephones). On December 7, 1970, in accordance with procedures set out in § 2518, Judge Latchum of this Court, based upon a showing of probable cause, authorized the installation of a tap and pen register for ten days on a telephone registered in the name of George M. Hickman, 1500 E. Ayre Street, Newport, Delaware. Again, on December 13, 1970, the Court authorized the wiretap of another telephone registered to Hickman at 217 W. 18th Street, Wilmington, Delaware.

In both applications for a wiretap, the only individual specifically named was defendant, Perillo. However, the case against certain of the defendants is based upon evidence obtained against them as a result of the two wiretap and pen registers authorized against defendant, Perillo.

Before considering the specific questions challenging the validity of the statute, certain general observations should be made. While no decision of the Supreme Court has held wiretapping unconstitutional per se, this backstairs manner of obtaining evidence is inherently offensive to the Anglo-Saxon mind and can only be condoned because of the constant and ever-increasing struggle between the criminal and law enforcement elements of our society. Wiretapping and "bugging" constitute a potential en-

F. L. Peter Stone, U. S. Atty., Wilmington, Del., for plaintiff.

Harold Leshem, of Booker, Leshem, Green, Shaffer, Berl & Wise; Morton R. Kimmel; William C. Bradley, Jr., and Norman N. Aerenson, of Aerenson, Balick & Balick; John E. Babiarz, Jr., of Biondi & Babiarz, and Jay Conner, of

---

1. Wire Interception and Interception of Oral Communications, sometimes known as the "wiretap" statute.

croachment upon certain zones of personal privacy about which the Supreme Court has commented on several occasions. Thus, in Stanley v. Georgia,[2] the Court held that it was unconstitutional to make the mere private possession of obscene materials a crime because an individual has a:

"  *   *   * right to be free, except in very limited circumstances from unwanted governmental intrusions into one's privacy."[3]

In Griswold v. Connecticut,[4] the Court, in holding that the Connecticut statute prohibiting the use of contraceptives was unconstitutional, held that some of the Amendments to the Constitution create areas of privacy which must be free from governmental intrusion.[5] In Camara v. Municipal Court,[6] which held that a person could refuse a code-enforcement inspection of his personal residence without a warrant, the Court stated that the basic purpose of the Fourth Amendment:

"  *   *   * is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[7]

It is against this policy recognizing "the sanctity of a man's home and the privacies of life"[8] and minimizing instances of unwanted governmental intrusions, that the commands of the Fourth Amendment must be interpreted. The Fourth Amendment states that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[9]

Under the terms of the amendment, then, every search must be reasonable and conducted under the authority of a proper warrant.

█ Even if wiretapping is reasonable, however, it still may be irreconcilable with the requirements of the warrant clause of the Fourth Amendment. The Supreme Court has taken occasion to comment on these questions in considering related issues of wiretaps and electronic surveillance in three recent cases.

In Osborn v. United States,[10] petitioner, a lawyer, was indicted for attempting to bribe a member of a jury panel. He had hired an investigator to delve into the backgrounds of the prospective jurors. Upon being advised by the investigator that he had a relative on the panel, the petitioner manifested a desire to make contact with that member of the panel. Having reported to federal agents the aims of the lawyer, an affidavit was drawn up and presented to two District Court judges, who authorized the use of an electronic device to record further conversations between petitioner and the investigator. Such a recording was made and held admissible by the Supreme Court.

The *Osborn* case is not precedent for expansive or continuous electronic surveillance due to several factors. First, the investigator could, and did, testify to the conversations he had carried on with the petitioner including the one on which a bug was used. Thus the tape recording was corroborating evidence.[11]

2. 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed. 2d 542 (1969).

3. *Stanley*, at 564, 89 S.Ct. at 1247.

4. 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965).

5. *Griswold*, at 484, 85 S.Ct. 1678. The areas of privacy are associated with the First, Third, Fifth, Ninth and Fourth Amendments.

6. 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed. 2d 930 (1967).

7. *Camara*, at 528, 87 S.Ct. at 1730.

8. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

9. U.S.Const. amend. IV.

10. 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).

11. *Osborn*, at 326, 87 S.Ct. 429. The fact that the recording was used as a corroboration shows three things: (1) the case against petitioner was essentially complete before the recording was made;

The District Court judges had authorized the agents of the FBI to conceal a recorder on the investigator:

"* * * in order to determine from recordings of further conversations between Vick and the petitioner whether the statements in Vick's affidavit were true."[12]

Second, the authorization was issued upon a "detailed factual affidavit alleging the commission of a specific criminal offense", and with a "particularized purpose",[13] for a short period of time; i. e., a single meeting between the petitioner and the investigator. Thus, the limited duration, strong showing of probable cause, and the very particularized scope of the search made it reasonable in the eyes of the Supreme Court.

Nor does Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) condemn wiretapping as unconstitutional. That decision turned on the failure to obtain a search warrant.

In that case, petitioner was convicted of transmitting wagering information across state lines. FBI agents had attached a listening device to a pay phone which petitioner was using and thus recorded his end of the conversations, and subsequently introduced the recording at trial as evidence. Writing for the majority, Justice Stewart stated that the eavesdropping violated the privacy which Katz had justifiably relied on and, therefore, in the absence of a search warrant, infringed upon his Fourth Amendment rights.[14] But since the right to privacy is not an absolute right, the question turns on whether or not the invasion of Katz' privacy was reasonable.

Clearly, the Court found that there was no "fishing expedition" here:

"They [FBI agents] did not begin their electronic surveillance until investigation of the petitioner's activities had established a strong probability that he was using the telephone in question to transmit gambling information. * * * * " [15]

The surveillance was limited, both in scope and duration:

"* * * to the specific purpose of establishing the contents of the petitioner's unlawful telephonic communications. The agents confined their surveillance to the brief periods during which he used the telephone booth, and they took great care to overhear only the conversations of the petitioner himself."[16]

Nevertheless, the Court reversed, holding that under such conditions a magistrate could and should have issued a search warrant authorizing a search and seizure.[17] Had the agents gone before a magistrate, the limited duration and scope of the proposed search and the strong showing of probable cause would in all probability have resulted in their obtaining a warrant and carrying out a reasonable search. Thus, the Supreme Court has clearly held that electronic searches and seizures are reasonable if they are made to adhere strictly to the demands of the warrant clause of the Fourth Amendment.

This brings us to Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L. Ed.2d 1040 (1967), by far the most important and relevant decision in this area. There a majority of five justices struck down as unconstitutional a New York eavesdropping statute (Section

---

(2) the bug in no way resembled a general search, but was quite particular; and (3) there was a strong probable cause to authorize the bug.

12. *Ibid.*, at 328–329, 87 S.Ct. at 432.

13. *Ibid.*, at 330, 87 S.Ct. at 433.

14. *Katz*, at 353, 88 S.Ct. 507. In his concurring opinion, Justice Harlan explained

that privacy justifiably relied on is established by (1) a person exhibiting an actual (subjective) expectation of privacy; and (2) the expectation being reasonable.

15. *Ibid.*, at 354, 88 S.Ct. at 512.

16. *Ibid.*, at 354, 88 S.Ct. at 512.

17. *Ibid.*, at 354–355, 88 S.Ct. 507.

813–a of the New York Code of Criminal Procedure) because it was " * * * too broad in its sweep resulting in a trespassory intrusion into a constitutionally protected area."[18]

First, the majority decided that the language of the New York statute was probably not equivalent to the "probable cause" requirement of the Fourth Amendment, a debatable decision but of no significance in the case at bar because § 2518 substitutes the words "probable cause" for "reasonable ground" used in the New York statute.

Secondly, it contained no requirement for particularity in the warrant regarding the specific crime committed, "the place to be searched", or "the persons or things to be seized." The Court felt that given the inherent nature of electronic surveillance, these safeguards were particularly necessary,[19] and contrasted the deficient requirements of the New York statute with the procedures undertaken in *Osborn.*[20]

Third, the statute did not limit the surveillance to one limited intrusion, nor did it require prompt execution of the warrant.[21]

Fourth, the statute authorized eavesdropping for up to a two-month period, which the Court characterized as the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause.[22]

Fifth, because an extension of undefined duration was authorized by the statute on a bare showing that such prolongation be "in the public interest."[23]

Sixth, the statute placed no mandatory termination on the wiretap once conversations sought were seized.[24]

Seventh, the statute had no requirement for notice, "nor does it overcome this defect by requiring some showing of special facts." [25] Thus, the Court found the statute unconstitutional for the reasons that it was not of limited duration and particular scope, did not require a strong showing of probable cause, and permitted unreasonable searches and seizures prohibited by the Fourth Amendment. This decision, however, in no way precludes the Court from holding that a more narrowly drawn statute is constitutional.

*Berger* is of importance for several reasons: first, because of the analogy between the New York statute and the provisions of the wiretap statute here in question; secondly, because Congress thereafter drafted and passed §§ 2510–2520 with the clear purpose of avoiding the constitutional defects pointed out in *Berger* and *Katz*; and, thirdly, because, since four justices held the New York statute in *Berger* constitutional in any event, the scrupulous care taken by the Congress to cure the constitutional pitfalls in *Berger* might well swing one or more of the *Berger* majority into upholding the Act as constitutional.

And in concluding these general observations preliminary to a consideration of the specific points raised in defendants' brief, it should be noted that the Omnibus Crime Control and Safe Street Act of 1968 (of which §§ 2510–2520 are a part) represents the considered response of Congress to the "high incidence of crime in the United States" which "threatens the peace, security and general welfare of the nation and its citizens"; [26] and that Congress specifically found as a fact [27] that such tools as

18. *Berger*, at 44, 87 S.Ct. at 1876.

19. *Ibid.*, at 56, 58–59, 87 S.Ct. at 1883.

20. *Ibid.*, at 56–57, 87 S.Ct. 1873.

21. *Ibid.*, at 57, 87 S.Ct. 1873.

22. *Ibid.*, at 59, 87 S.Ct. 1873.

23. *Ibid.*, at 59, 87 S.Ct. 1873.

24. *Berger*, at 59–60, 87 S.Ct. 1873.

25. *Ibid.*, at 60, 87 S.Ct. at 1884.

26. S.Doc.No.1097, 90th Cong., 2nd Sess. (1968), at 1.

27. The extent to which courts should defer to Congressional findings of fact is illustrated by Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), in which the Supreme Court went so far as to assume facts which Congress might have found and then deferred to them.

wiretapping and "bugging" were essential to combat organized crime:

> "Organized criminals make extensive use of wire and oral communications in their criminal acts. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice."[28]

Also, Congress deliberately inserted in the statute provisions intended to assure the reasonableness of searches and seizures authorized by § 2518.[29]

■■ Moreover, the strong presumption of constitutionality afforded to an act of Congress is more compellingly recognized by courts when Congressional judgment is directed towards the interpretation of vague rather than unambiguous words of an amendment.[30] The word "unreasonable" is certainly an ambiguous word; therefore, this Court should be slow to upset the Congressional determination of what constitutes a reasonable search and seizure as expressed in the terms of this statute in the absence of a strong conviction that the judgment of Congress was erroneous.

We proceed now to the specific grounds relied on by defendants in their attacks against the constitutionality of the statute in question: (1) the statute does not require the setting forth with sufficient particularity the identity of the specific persons to be intercepted by the wiretap; and (2), the statute permits continuous searches for a period of up to thirty days based upon a single showing of probable cause.

■ As to the first ground, the Fourth Amendment on its face requires only that the place searched, and the persons *or* things to be seized be particularly described. Thus, a search warrant setting forth a specific area to be searched and a specific object to be seized would be perfectly valid even though no person were named in the warrant, and courts have always so held.[31] The requirement of particularity accomplishes two ends. First, it narrows the permissible scope of the search.[32] Second, it limits the seizure to the items specifically set forth on the face of the warrant, or persons and objects reasonably come upon during the search for those stated items.[33] These ends can be easily met without setting

---

**28.** § 801(c).

**29.** S.Doc., at 66, 74–76, 101–105.

**30.** E. g., In United States v. Di Re, 332 U.S. 581, 585, 68 S.Ct. 222, 224, 92 L.Ed. 210 (1948), the Court said: "Obviously the Court should be reluctant to decide that a search thus authorized by Congress was unreasonable and that the Act was therefore unconstitutional. * * * (This is even more true) in view of the strong presumption of constitutionality due to an Act of Congress * * * when it turns on what is 'reasonable'." See, *Berger*, 388 U.S. at 74–75, 87 S.Ct. 1873, Justice Black dissenting.

**31.** United States v. Leach, 24 F.2d 965 (3rd Cir. 1928), Dixon v. United States, 211 F.2d 547 (5th Cir. 1954), Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965), Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), United States v. Ortiz, 311 F.Supp. 880 (D.Colo. 1970).

**32.** In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Court limited the area which could be searched as an incident to a lawful arrest

to that which the person who is apprehended has access. Judge Learned Hand, in United States v. Kirschenblatt, 16 F.2d 202, 203 (2nd Cir. 1926), said that "it is small consolation to know that one's papers are safe only so long as one is not at home." Both these courts were attempting to limit the permissible scope of searches.

**33.** In Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927), the Court said: "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

In Kremen v. United States, 353 U.S. 346, 347–348, 77 S.Ct. 828, 829, 1 L.Ed. 2d 876 (1957), the Court held that "the seizure of the entire contents of the house and its removal some two hundred miles away * * * are beyond the sanction of any of our cases."

forth on the face of the warrant the name of the person to be searched. Thus, § 2518(1) (b) (iv), which states that application for the interception of a wire communication shall state the identity of the person committing the offense only if known, is not unconstitutional.

■ Defendants contend, however, that this logic does not apply to a third party who might make a call over a phone which has been wiretapped. Some of the defendants fall into this latter category. They argue that if no probable cause existed upon which a search warrant directed against a third party could validly issue, then §§ 2518(1) (b) (iv) and 2517(5)[34] are unconstitutional because they neither require the naming of the third party in the warrant, nor the discarding of the fruits of the "illegal" search.

This argument is not persuasive. Not infrequently a search will reveal items which do go beyond the scope of a search, and the seizure of these items is prop-

er, providing that, in the first place, the search warrant was properly issued and served.[35] Thus, in Alderman v. United States,[36] the Supreme Court stated that police discovering narcotics while searching a home for gambling paraphernalia pursuant to a valid warrant could seize the drugs and introduce them into evidence.[37] Undoubtedly, had the police seen a third party selling drugs on the premises while they were executing the search warrant, they could have searched him, too, and introduced the fruits of that search into evidence in a criminal proceeding against the third party.

It would seem, then, that §§ 2518(1) (b) (iv) and 2517(5) are constitutional so long as the statute provides that probable cause and a particular description of the place to be searched and the things to be seized are prerequisites to the issuance of a warrant. §§ 2518(1) (b) and (3) (a), (b) and (d) clearly meet these conditions.[38] The applicant seeking a warrant must give a complete

---

34. "When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used. * * *"

35. *Berger*, 388 U.S. at 108, 87 S.Ct. at 1909, Justice White dissenting: "[in] almost all searches of private property which the Fourth Amendment permits * * * the police must necessarily see or hear, and comprehend, items which do not relate to the purpose of the search. That this occurs, however, does not render the search invalid, so long as it is authorized by a suitable search warrant and so long as the police, in executing that warrant, limit themselves to searching for items which may constitutionally be seized."

36. 394 U.S. 165, 175 n. 10, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). See, Harris v. United States, 331 U.S. 145, 155, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

37. In *Marron*, 275 U.S. at n. 36, 48 S.Ct. 74, supra, the Court held that records of a criminal act found at the site of the

arrest could be taken as incident to arrest although they were not described on the face of the search warrant. See, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

38. § 2518(1): Each application shall include * * *
   (b) a full and complete statement of the facts and circumstances relied upon by the applicant * * * including (i) details as to the particular offense * * * (ii) a particular description of the nature and location of the facilities from which * * * the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;
   § 2518(3): (The judge determines)
   (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516. * *
   (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
   (d) there is probable cause for belief that the facilities from which, or the

statement of the facts he relies on, and the issuing magistrate must not only find probable cause for the belief that a person is, has, or may commit a particular crime, but also that the intercept will be on the facilities used for such crime and that particular communications will be obtained from the intercept.[39]

Even if all these conditions were met, however, the issuing magistrate cannot authorize a wiretap unless he also finds that normal investigative procedures have either failed previously, appear unlikely to work subsequently, or seem too dangerous to attempt.[40] This extra protection of privacy, above and beyond that required by the Fourth Amendment, manifests the intention of the framers of the statute to ensure that each wiretap would be not only reasonable, but also necessary. These statutory sections cited show that applications for wiretaps must be narrow in scope and limited in objects to be seized before an order authorizing the interceptions of a wire communication will issue.

In this connection, Judge Cabot stated in United States v. Sklaroff:

"I therefore hold as a matter of law that if a lawful court order of authorization to intercept wire communications of named persons is issued, and in the course of the authorized interception, conversations between the named person and other persons not named * * * are lawfully intercepted, and the intercepted conversations of the unnamed persons and the evidence derived therefrom are admissible in evidence * * * against the unnamed persons * * *." [41]

Therefore, since the statute fulfills all the requirements of the Fourth Amendment regarding persons whose phones are tapped and third parties calling into a tapped phone, the defendants' first argument is without merit and will be dismissed.

■ The second ground upon which the defendants assert the unconstitutionality of the statute is that upon a single showing of a probable cause, the act authorizes (1) what is in effect a continuous search, and (2) a search which can last for a period of up to thirty days.[42] In striking down the New York statute in *Berger*, the Court stated that:

"* * * authorization of eavesdropping for a two-month period is the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause".[43]

In *Osborn*, the order authorized the investigator to intercept only one conversation, and in *Katz*, the interceptions were similarly limited. These limitations were in no small measure responsible for the favorable reactions of the Court to the interceptions challenged in those cases. Thus, defendants' second ground must be very carefully considered.

Even if the duration of the wiretap were limited to an hour, it is very possible that the tap would pick up several telephone conversations which might range from a wrong number or a social call to the particular communication sought from the tap. If defendants' ar-

---

place where, the wire or oral communications are to be intercepted are being used * * * in connection with * * such offense. * * *

39. This Court feels that such safeguards demonstrate that the statute requires "the most precise and rigorous standard of probable cause" which Justice Stewart found lacking in the New York prosecution in *Berger*, 388 U.S. at 69, 87 S.Ct. at 1888.

40. § 2518(3) (The judge must determine) (c) normal investigative procedures have been tried and have failed or reason-

ably appear to be unlikely to succeed if tried or to be too dangerous.
See, § 2518(1) (c).

41. 323 F.Supp. 296, 325 (S.D.Fla.1971).

42. § 2518(5) No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days.

43. *Berger*, 388 U.S. at 59, 87 S.Ct. at 1883.

gument were accepted, it would require that after each time the phone had been used, a new application for a wiretap authorization would have to be made. Such a holding would essentially eliminate the use of wiretaps.

But this contention is not acceptable. As Justice White said in *Berger*,[44] "In searching for seizable matters, the police must necessarily see or hear, and comprehend, items which do not relate to the purpose of the search." For example, if the applicant for a warrant were to state, based upon probable cause, that the object of the search was a specific person believed to be concealed in a twenty-room house, and in executing that warrant the police did not find the person so named until they entered the tenth room, it could not be logically contended at a subsequent trial that evidence found on said person was unconstitutionally seized because the police had not obtained a separate warrant for each room. The safeguards for the defendant in such a situation are the requirements of probable cause and particularity in the warrant. The searching of twenty rooms on the authority of one warrant does not make the search a continuous one based upon a single showing of probable cause.

Similarly, in the case at bar, the safeguards of probable cause and particularity were afforded to the defendants before the authorization for the intercept was issued; therefore, the overhearing of several phone conversations before coming upon the one specifically sought and which afforded the basis for the issuance of the intercept is no more a continuous search based upon a single showing of probable cause than is the example of the person in the rooms of a house. Thus, the argument of the defendants, that the statute permitting such searches upon one showing of probable cause is unconstitutional, must be rejected.

Defendants claim, however, that even if such a search is constitutional, extending it for a period of up to thirty days is unreasonable, and, therefore, must fall within the proscriptions of the Fourth Amendment. The government responds by asserting that under §§ 2518(5) and (6)[45] the issuing magistrate has the power to limit the wiretap to a single telephone call,[46] that the thirty-day period was intended to be used only "where a course of conduct embracing multiple parties and extending over a period of time is involved",[47] and that the judge issuing the order can closely supervise the functioning of the interception. These arguments are not wholly responsive to the claim of the defendants because the statute does not absolutely compel the issuing judge to restrict in duration and supervise the conduct of the wiretap. Therefore, the constitutionality of the statute must be ascertained as if the duration of each interception were thirty days.

The *Berger* Court condemned eavesdropping for a period of sixty days pursuant to a single showing of probable cause. It did not, however, hold that forty, or ten, or two days' eavesdropping pursuant to a single showing of probable cause was improper.[48]

---

44. Footnote 35, supra.

45. § 2518(5), at footnote 42, supra.
   § 2518(6) Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order * * * at such intervals as the judge may require.

46. In the case at bar, the wiretaps were issued for ten-day periods and terminated before the time limit passed, as required by § 2518(5).

47. S.Doc., at 101.

48. In *Berger*, 388 U.S. at 69, 87 S.Ct. at 1889, in his concurring opinion, Justice Stewart implied that "the most precise and rigorous standard of probable cause" could "justify an intrusion" of 60 days. In a dissenting opinion, at 85, 87 S.Ct. at 1897, Justice Black wrote that the Fourth Amendment "does not require the warrant to limit the time of a search."

Judge Mehrtens in the Southern District of Florida rejected this identical argument saying:

"Unlike the New York statute condemned in Berger, Title III limits the initial period of interception to no longer than 30 days, provides for the termination of the interception when the authorized objective has been accomplished, requires reestablishment of probable cause for any and all extensions, provides for judicial supervision throughout the period of the interception and requires minimizing of the interception of communications not otherwise subject to interception under that Act."[49]

I agree with the conclusions of Judge Mehrtens, above set forth on this point, with the following general comments. This statute being an Act of Congress carries with it a presumption of constitutionality. Moreover, the clear Congressional effort to conform the challenged sections of the statute with the criticisms expressed by the majority in *Berger* should not, in my view, be lightly disregarded.

Defendant's motion will be denied.

Submit order.

---

49.  United States v. Escandar, 319 F.Supp. 295, 300 (S.D.Fla.1970).