John J. Walsh, J.
On June 17, 1963, the Hon. Frank Del Vecohio, Justice of the Supreme Court, issued search warrants to the State Police to search the premises at 1019 West Belden Avenue and 138 Hampton Boad, Syracuse, New York.
The defendant, Joseph Guarnier, was arrested at his home at 1019 West Belden Avenue, Syracuse, New York, on June 21, 1963 and at such time his residence was searched pursuant to such search warrant and certain items were seized including some lottery tickets.
The defendant Frank Bagozzi was arrested away from his residence but his home at 138 Hampton Boad, Syracuse, New York, was searched pursuant to the search warrant, and certain items were seized, most of which appear to have little materiality to the charge against that defendant.
The defendants contend that the affidavits upon which the search warrants were based were legally insufficient and contained no factual information sufficient to indicate probable cause for the issuance of search warrants, nor did such affidavits indicate any probable cause supported by facts and circumstances therein set forth to indicate that any law was being violated upon the premises which were authorized to be searched pursuant thereto.
In the case of Mapp v. Ohio (367 U. S. 643) the Supreme Court of the United States extended the Federal rule theretofore applied only in the Federal courts to the State courts and held (p. 655) “ that all evidence obtained by searches and seizures in violation of the Constitution is, by the same authority, inadmissible in a state court.” In other words the State courts are commanded to exclude in criminal trials all unconstitutional evidence obtained as a result of unreasonable search. This decision overruled the common-law rule of admissibility previously followed by New York State in permitting the admis^ sion into evidence in a criminal trial of evidence irrespective of how it was obtained or seized.
*280 ■ In addressing our attention to the motion before the court, we are aided in a very marked degree by two recent decisions of the Court of Appeals determining the minimum requirements for the issuance “ upon probable cause ” of such warrants.
In People v. Politano (17 A D 2d 503, affd. 13 N Y 2d 852) the court found a lack of “ probable cause ”, and reversed the conviction of the" defendant. Am examination of the record in that case reveals the paucity of the allegations in the affidavit upon which the search warrant was issued. In its entirety, the affidavit reads as follows:
T. S. Winnicki, .being duly sworn, deposes and says:
■ 1. I am a Peace officer of the State of New York, to wit, a member of the New York State Police, Loudonville, New York.
2. Since April 15, 1961, an investigation has been conducted of [blank], and for “ John Doe ”, the name “John Doe” being fictitious, his true name being unknown, and/or others and of the premises known as George Politano Residence located at 140 & 142 East Main St., Amsterdam, N. Y.
3. During said investigation, eavesdropping and recording, pursuant to lawful order, was had of telephone calls made to and from the said premises. During said investigation, deponent overheard [blank] and/or “ John Doe”, the true name being unknown, and/or others engaged in “ keeping a place for or transferring money in the game of policy ” in violation of Section 974 of the Penal Law of the State of New York.
4. By reason of the aforementioned facts, deponent is satisfied that keeping a place for or transferring money in the game of policy in violation of the Penal Law of the State of New York, is being conducted at the premises known as George Politano Residence 140 & 142 East Main St., Amsterdam, N. Y., and that certain personal property is there being used by [blank] and/or “John Doe”, the name “John Doe” being fictitious, his true name being unknown, and/or others, as the means of committing a public offense, to wit, “Keeping a place for or transferring money in the game of policy”. Said property consists of books, records, and other equipment and paraphernalia generally used in playing the game of policy.
5. This affidavit is made for the purpose of obtaining a Search Warrant enabling a Peace Officer of the County [blank] or a member of the New York State Police, pursuant to Section 223 of the Executive Law of the State of New York to search said premises in order to obtain possession of the property hereinabove described.
s/T. S. Winnicki
New York State Police.
The affidavit in the Politano ease was devoid of a single allegation of ultimate fact upon which the court might determine whether the affiant had “ reasonable ground ” for the application. The sole ultimate fact alleged in paragraph 3 thereof was that at some unspecified time telephone eavesdropping was had. There was no allegation as to what was heard, who was overheard, when it was overheard and where. In such circumstances, the affidavit was clearly insufficient.
*281 In the other ease, decided by the Court of Appeals on June 6, 1963 (People v. Marshall, 13 N Y 2d 28), the judgment of conviction was affirmed on appeal. In that case, the defendant did not question the adequacy of the evidence upon which he was convicted but attacked the form, the method of issuance and the sufficiency of the grounds for issuance of the search warrant, and the seizure of the evidence itself.
The search warrant was issued upon the affidavits of two police officers, one of which averred that he had been given information by an unnamed informer that a certain restaurant was being used for gambling purposes. The other affidavit was from a patrolman who swore that for a period of several weeks he had kept the restaurant under surveillance and that he several times saw four persons whom he believed were policy collectors orally accept policy plays from unknown persons who handed money to them and the alleged collectors made notations on papers and then entered defendant’s restaurant carrying the papers, went into the rear room of the restaurant, conversed with the defendant and then left without the slips of paper.
The Court of Appeals found that the two affidavits established “ probable cause ”.
In the instant case now before this court, the affidavits would appear to fall somewhere in the unmarked zone between what was declared insufficient in People v. Politano and what was declared sufficient in People v. Marshall.
A finer delineation of the rule of sufficiency must depend upon the application of the rule pronounced in People v. Marshall (supra, p. 34): “ Probable cause exists when there is reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious man in the belief that the law is being violated on the premises to be searched (Carroll v. United States, 267 U. S. 132; Dumbra v. United States, 268 U. S. 435; Aderhold v. United States, 132 F. 2d 858). It is not a matter for technical rules or tight and exact definition. The question always is: what in the common judgment of reasonable men would be regarded as good, sound cause, remembering that we seek only probable, not absolute cause? Only the ‘ unreasonable ’ searches and the warrants signed without ‘ probable cause ’ are forbidden by the Fourth Amendment. * * * Whether probable cause is present in a particular case must be determined from the facts of that ease (United States v. Ramirez, 279 F. 2d 712, 714, cert. den. 364 U. S. 850).”
With regard to the motion made on behalf of the defendant, Joseph Guarnier, the only references in the affidavits upon which the several warrants were issued against the defendants gen *282 erally, which had any relation to the defendant Gnarnier were those of Thomas F. Gallagher, Jr. and Charles Cox.
The affidavit of Gallagher had this to say about defendant Guarnier: “ On or about May 2, 1963 pursuant to a court order, I overheard and monitored a telephone conversation between persons identified as Angelo Thomas and Joseph Guarnier. In the course of their conversation, both parties mentioned the number 47174. I have examined the figures published in the newspapers at that period of time, showing the United States Treasury balance, and using the method described above, each of the numbers discussed by the parties in the conversation, corresponded to United States Treasury balance numbers. ’ ’
The affidavit of Charles Cox referred to the defendant Guarnier as follows:
11 On April 25, 1963, pursuant to Court order, I intercepted and overheard a conversation between Angelo Thomas and a person identified as Joseph Guarnier. In the course of this conversation, Thomas gave to Guarnier, the following number: 83546. That on other occasions, I have seen Joseph Guarnier and Angelo Thomas in each others company * * *.
“ For the period previous to and including April 25, 1963, the last five numbers, determined by the same method, were 05609, 92670, 69904, 69736 and 83546 ”.
The search of the Guarnier residence produced a considerable number of articles which can be classified as contraband. The term “ contraband ” includes policy slips and book-making plays and records. The mere possession of contraband constitutes a public offense. Of course, the success of the search is not the test of “ probable cause ” for the issuance of the search warrant but rather the sufficiency of the affidavits themselves. In the Politano case (supra) the search produced a quantity of policy slips but that fact did not preclude the court from reversing the conviction based upon such illegally seized contraband.
Turning to an examination of the affidavits upon which the search warrant for the Guarnier residence was issued, it is the opinion of this court that Supreme 'Court Justice Del Vecchio was justified in his determination that there was probable cause in reasonable existence for the issuance of the search warrant.
The finding of probable cause from an examination of such affidavits is a judicial function and the finding of the issuing Judge on the issue of probable cause ought to be binding unless arbitrary or patently erroneous.
The decision to issue the search warrant was certainly not patently erroneous nor was it arbitrary.
*283 With respect to the defendant, Frank Bagozzi, he was mentioned only in the affidavit of Charles Cox:
£< On April 25, 1963, pursuant to Court order, I intercepted and overheard a telephone conversation between Angelo Thomas and one Frank Bagozzi. In the course of that conversation, Angelo Thomas gave to Frank Bagozzi, the following numbers: 05609, 92670, 69904, 69736 and 83546. Bagozzi repeated these numbers and Thomas then said: ‘ it’s better I don’t come over tonight. It’s better you tell him another month’. * * *
££ For the period previous to and including April 25, 1963, the last five numbers, determined by the same method, were 05609, 92670, 69904, 69736 and 83546.”
Here again, the decision of Judge Del Veochio to issue the search warrant was neither arbitrary nor patently erroneous.
Defendants raise a more serious question as to the procedure employed in granting the search warrants.
Section 794 of the Code of Criminal Procedure provides, in part, as follows:
££ § 794. Examination of person seeking warrant and witnesses.
££ The person seeking the warrant shall appear personally before the judge, justice or magistrate who may, before issuing the warrant, examine, on oath, the person seeking the warrant and any witnesses he may produce, and must take the affidavit or deposition of the person seeking the warrant.” (Italics supplied.)
The defendants argue that the affidavits submitted to Justice Del Veochio were all verified before Judge Ogohowski (the Utica City Court Judge) on June 14, 1963 in connection with an application to the latter for warrants of arrest in connection with an alleged violation of section 1372 of the Penal Law. It is further claimed that no affidavit was subscribed or sworn to before Justice Del Veochio who did not examine any witness personally before issuing the search warrants.
The examination of the person seeking the search warrant and any witnesses he may produce rests in the sound discretion of the Magistrate.
In Matter of Kirkpatrick (223 N. Y. S. 2d 886, 888) the court held that a deposition in writing sworn to before the Clerk of the court was sufficient compliance with the statute where the Clerk was authorized by law to take acknowledgments.
In the instant cases, the deposition was sworn to before the Hon. Matthew S. Ogonowski, City Judge. In this respect, the taking of the deposition was surrounded with all of the solemnity *284 and precision which is the underlying purpose of the statute. To hold that the issuance of the search warrants in this case was abortive because the depositions were sworn to before a Judge other than the one actually issuing the search warrants would be to place more importance on form than on substance. “It is not a matter for technical rules or tight or exact definition ” (People v. Marshall, 13 N Y 2d 28, 34, supra).
■Since no constitutional right of either defendant was impaired by the mere fact that the depositions were sworn to before a different Judge, this court holds that there was sufficient compliance with the statute.
The motion to vacate the search warrants and to suppress the evidence seized thereby is in all respects denied.