**UNITED STATES of America,
Plaintiff,**

v.

**William Dennis "Bill" SCHEBERGEN
et al., Defendants.**

**Crim. A. No. 47253.**

United States District Court,
E. D. Michigan,
S. D.

Jan. 10, 1973.

Laurence Leff, Atlee Wampler III, Dept. of Justice, Detroit, Mich., for plaintiff.

Murray Chodak, Ronald Steinberg, George Belitsos, Joel M. Shere, Shere & Klein, Detroit, Mich., Brisbois & Sturtz, Saginaw, Mich., Samuel Yura, Marvin Blake, Kay D. Schloff, George E. Woods, Jr., Kenneth Mogill, Edward V. Boggs, Detroit, Mich., A. Dale McWilliams, Dearborn Heights, Mich., Howard Wittenberg, Southfield, Mich., Neil Fink,

Robert Slameka, Dorean Koenig, Arthur J. Koscinski, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS

FEIKENS, District Judge.

Defendants move to suppress wiretap evidence. The grounds urged in support of this motion are: (1) the unconstitutionality of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 2510 et seq.), (2) the Government's failure to establish the reliability of the informants cited in the agent's affidavit, (3) the court's non-recognition of insufficiency of probable cause to order interception of the wire communication of "others as yet unknown," (4) the court's non-recognition of insufficiency of probable cause to order use of a pen register or touch-tone decoder, and (5) the court's order was overbroad, and therefore it authorized a general search.

On March 29, 1972, Judge Cornelia G. Kennedy issued an order authorizing the interception of wire communications of

> Joseph Edward GUNNINGHAM, Charles D. REES, James Russell LE BLANC Esq., William D. SCHEBERGEN, Frank Lewis BANTLE, Alfredo SALAZAR, Norman GLICKMAN and others as yet unknown to and from the telephone utilized by Joseph Edward GUNNINGHAM, located in the premises at 19243 Keating, Detroit, Michigan and carrying telephone numbers 313–366–5091, concerning the above-described offenses [21 U.S.C. §§ 960(a)(1)–(3), 963, 843(a)(1), 843 (b)].

The interception was to continue

> because of the breadth and complexity of [the named persons'] illegal controlled substance importation . . . until communications are intercepted that reveal the identities of [the named persons'] co-conspirators, aiders and abetters, their places of operation, and their dates, times, places, schemes and manners for importing, selling, buying, bringing, possessing, concealing, delivering, manufacturing, distributing or paying for controlled substances, or for a period of twenty (20) days from the date of this Order, whichever is earlier.

On the same date, Judge Kennedy issued an order authorizing use of a pen register or touch-tone decoder on the same ("Gunningham") telephone in order to seize the telephone numbers of outgoing calls made on that telephone.

Both orders were extended for fifteen days on April 18, 1972. At that time the names of defendants James H. Valdez, Hyland Fye, Ronald Kurant, "Greg," "Jim," "Louie," and "R.C." were added to the authorization. Additional fifteen-day extensions were authorized and ordered on April 25, 1972, and May 3, 1972.

The indictment in this case was returned on May 19, 1972, alleging unlawful conduct up to and including May 10, 1972.

Defendants say that Title III is unconstitutional and cite the reasoning and result in United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972). The weight of authority is clearly to the contrary. See United States v. Cox, 449 F.2d 679 (10th Cir.1971); United States v. Vigi, 350 F.Supp. 1008 (E.D.Mich.1972, Criminal Action No. 46922); United States v. Tortorello, 342 F.Supp. 1029 (S.D.N.Y. 1972); United States v. King, 335 F. Supp. 523 (S.D.Cal.1971); United States v. Lawson, 334 F.Supp. 612 (E.D.Pa. 1971); United States v. Perillo, 333 F. Supp. 914 (D.Del.1971); United States v. Scott, 331 F.Supp. 233 (D.D.C.1971); United States v. Cantor, 328 F.Supp. 561 (E.D.Pa.1971); United States v. Sklaroff, 323 F.Supp. 296 (S.D.Fla.1971).

■ More important, the teachings of these decisions are persuasive that Title III is constitutional. This court so holds.

The remaining questions are whether the orders of Judge Kennedy comply with the statute and the Constitution.

Defendants argue that the affidavit in support of the authorization and order does not establish the reliability of the informants. The credentials of the seven anonymous informants are described in virtually identical terms as having "provided valuable information which has been corroborated by independent investigation and by other sources of information." (Some informants supplied "reliable and valuable information"; others provided information over specific time periods; two informants supplied information which "has been the basis for four separate arrests involving large-scale narcotic violators.") (Paragraphs 6–12).

Defendants concede that the language used in this affidavit has been frequently approved. See, e.g., United States v. Mendoza, 433 F.2d 891 (5th Cir.1970), cert. den. 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971); United States v. Vigo, 413 F.2d 691 (5th Cir.1969); United States v. Shipstead, 433 F.2d 368 (9th Cir.1970); United States v. Dunnings, 425 F.2d 836 (2nd Cir.1969), cert. den. 397 U.S. 1002, 90 S.Ct. 1149, 25 L. Ed.2d 412 (1970). Defendants nonetheless question the constitutionality of utilizing such indicia of reliability.

Citing the landmark cases of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), defendants contend that furtherance of the constitutional policy of placing a neutral magistrate between law-enforcement personnel and the individual and the importance of the right of privacy demand that the affidavit in this case should have provided more detailed facts to support a conclusion of reliability.

The Government says the question has been settled in its favor in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). If Part II of Chief Justice Burger's opinion had been joined by a majority of the other Justices, the language found in the affidavit at bar would be more than sufficient. A careful reading of the case, however, discloses that only two Justices joined with Chief Justice Burger as to that part of his opinion which questioned the *Aguilar* and *Spinelli* cases. A four-Justice dissent places in doubt the Chief Justice's conclusions. In dissent, Mr. Justice Harlan emphasized that the decision of reliability is for the magistrate. Thus, where the anonymity of an informant is necessary

the agent surely could describe for the magistrate such things as the informer's general background, employment, personal attributes that enable him to observe and relate accurately, position in the community, reputation with others, personal connection with the suspect, any circumstances which suggest the probable absence of motivation to falsify, the apparent motivation for supplying the information, the presence or absence of a criminal record or association with known criminals, and the like. (600).

The inconclusiveness of the *Harris* case leaves this court with the *Aguilar* and *Spinelli* decisions and their progeny in the lower courts. In view of the uniform position taken by the lower courts and the absence of case authority to support defendants' position, this court concludes the credentials of the anonymous informants cited in the affidavit presented Judge Kennedy with sufficient "underlying circumstances" from which she could conclude that the information was reliable.

Defendants argue also that there was no probable cause to intercept the conversations of persons described as "others as yet unknown," and therefore such evidence must be suppressed. Defendants concede that where one of the named persons used the Gunningham phone to talk with an "unknown" person that conversation may be utilized against either person. See, e.g., United States v. King, 335 F.Supp. 523 (S.D. Cal.1971). But where one unnamed person used the Gunningham phone to talk with another unnamed person, defendants say the conversation must be suppressed.

The affidavit speaks to the existence of the unknown others. The agent made repeated references to others, and one of the primary purposes of the interception was to "reveal the identities of [the named persons'] co-conspirators, [and] aiders and abetters." (Order, p. 3). It is not clear what further facts the Government could have offered to establish probable cause as to the unidentifiable persons. Defendants suggest, for example, that detailed and careful surveillance of the premises where the telephone was located should have revealed identities of unknowns or at least resulted in an allegation that "others" entered the address. In fact, however, the affidavit states that surveillance was extremely difficult and did "little to reveal the importation, manufacture and distribution *network*." (Paragraph 28; emphasis added).

■ Being unable to specify the identities of *all* the persons involved, the Government properly relied on the sworn statement of an experienced agent that there were unnamed others. "Construing the affidavit in its entirety" and interpreting and testing it " 'in a common-sense and realistic fashion,' United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)", United States v. Williams, 459 F.2d 909 (6th Cir. 1972), this court concludes Judge Kennedy was presented with sufficent facts to support her finding of probable cause as to "others as yet unknown." See also United States v. Melancon, 462 F.2d 82 (5th Cir.1972).

■ Defendants also contend there was insufficient probable cause to order use of a pen register or touch-tone decoder. The facts surrounding the wire interception order and the order authorizing use of a pen register or touch-tone decoder are substantially the same. Applying the above legal principles, this court concludes there was probable cause to order use of such devices.

Finally, defendants say that even if there were facts sufficient to establish probable cause to seize the conversations of "others as yet unknown," the issuance of such an order constituted a general search. Defendants say that the effect of the order was to authorize the seizure of any conversation on the Gunningham phone and that such a seizure is overbroad and in violation of both the statute and the Constitution.

In Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court said:

> The Fourth Amendment commands that a warrant issue not only upon probable cause supported by oath or affirmation, but also "particularly describing the place to be searched, and the persons or things to be seized." (55, 87 S.Ct. 1882)

Whether the order at bar was sufficiently particularized is the final question for decision.

■ The Government says that the order conforms to the particularizing requirements of *Berger* and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), as codified at 18 U.S.C. § 2518(4)(a)–(e). This court agrees. The order specified the place, the types of communications, the time periods and the persons involved (even though some were unnamed). There was a nexus between the named and unamed persons, and it cannot be said that the reference to a limited number of unnamed persons resulted in an order lacking the required particularity.

A recent Eighth Circuit case involving facts similar to those at bar contains the following persuasive language:

> The wiretap in the present case illustrates the reasonableness of such electronic searches [under Title III]. Here, the application made a probable cause showing of a narcotics distribution network with ["ringleader" defendant] Richardson as its focal point. It demonstrated the exigency of gathering evidence as to all the tentacles of that enterprise by monitoring its communications center, and the tap was administered with each safeguard listed in *Berger*. Accordingly, this wiretap was not simply a "blanket

grant of permission to eavesdrop" [*Berger*, 388 U.S. at 60, 87 S.Ct. 1873] upon Richardson pursuant to one showing of probable cause as to him. It was a continuing search of several persons' conversations pursuant to a multiple showing of probable cause reaching several people using that telephone. United States v. Cox, 462 F.2d 1293, 1303–1304 (8th Cir. 1972).

Defendants' reliance on United States v. George, 465 F.2d 772 (6th Cir. 1972), is misplaced. In *George*, wiretap evidence was suppressed because it was obtained in violation of the authorization order. The order was much narrower than the one at bar but understandably so since it applied to a public telephone.

In the final analysis the order at bar complied with the statute. And since the statute conforms to the Constitution the order is valid. See United States v. Cox, 449 F.2d 679, (10th Cir. 1971). Accordingly,

It is ordered that defendants' motion to suppress be, and the same is, hereby denied.